IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     )
                                )
          v.              )  Criminal No. 05-207
                                )
MARQUISE GREEN           )

OPINION

On July 13, 2005, a federal grand jury returned a one-count indictment against Marquise Green ("defendant") charging him with possession with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(I). Currently before the court is defendant's pretrial motion to suppress. An evidentiary hearing was held before the court on November 22, 2005. For the reasons which follow, defendant's motion to suppress will be denied.

On the night of April 11, 2005, defendant was operating a vehicle on the Pennsylvania Turnpike when he was pulled over for speeding. Defendant's motion seeks suppression of all evidence, both physical and testimonial, obtained as a result of the stop. Defendant contends that the stop was made in violation of his Fourth Amendment rights and that the subsequent search of the vehicle was made without a warrant, without probable cause and without consent.

Specifically, defendant contends that: (1) the initial stop of the vehicle he was driving was made without reasonable suspicion; (2) the trooper illegally seized defendant by ordering him out of the vehicle; (3) the trooper illegally expanded the scope of the traffic stop by continuing to ask questions after the stop was "resolved"; (4) the officer conducted a search of the vehicle without consent; and, (5) the officers subsequently obtained a statement from defendant which was made without Miranda warnings and otherwise was involuntary.

Upon consideration of the testimony received at the hearing held on November 22, 2005, as well as the parties' briefs, the court finds that the government has met its burden of proving by a preponderance of the evidence that the traffic stop in question was initiated upon probable cause and that the subsequent search of the vehicle and the seizure of all evidence, both physical and testimonial, comported with the dictates of the Fourth Amendment. Accordingly, defendant's motion to suppress will be denied.

The Fourth Amendment protects individuals from "unreasonable searches and seizures."  United States Constitution, amend. IV. It is well-settled that the temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" within the meaning of the Fourth Amendment.  Whren v. United States, 517 U.S. 806, 809 (1996).  Accordingly, an automobile

2

AO 72A
(Rev.8/82)

stop is subject to the constitutional imperative that it not be "unreasonable" under the circumstances.   Id.

As a general rule, the burden is on a defendant who seeks to have evidence suppressed to prove that it was seized illegally. Johnson, 63 F.3d at 242.   However, once the defendant has established a basis for his motion, e.g., that the search or seizure was conducted without a warrant, the burden shifts to the government to show that the search or seizure was reasonable. Id.; see also Coward, 296 F.3d at 180 (government bears burden of proving existence of reasonable suspicion justifying a Terry traffic stop).   Accordingly, the government bears the burden of proving in this case by a preponderance of the evidence that the stop of defendant's vehicle was reasonable, i.e., that it was based upon probable cause to believe that defendant committed a traffic violation, and that the subsequent search of the vehicle, and seizure of evidence, was reasonable.

To meet its burden of proof, the government called two witnesses to testify at the suppression hearing.   The first witness was Pennsylvania State Police Trooper Westley Berkebile, the officer who observed the violation, initiated the traffic stop and conducted the search.   The second witness was Pennsylvania State Police Sergeant Anthony DeLuca, who arrived after the stop for any necessary assistance.   The defense called no witnesses. Based on the uncontradicted testimony of Trooper Berkebile and

3

Sergeant DeLuca, the court finds that the facts of the evening in question are as follows.

On April 11, 2005, at around 11:00 p.m., Trooper Berkebile, on construction zone patrol duty on the Pennsylvania Turnpike near the Allegheny Tunnel, observed a Buick LeSabre with dark tinted windows traveling at an apparent excessive rate of speed.  After clocking the vehicle on the radar gun as traveling about 55 mph in the 40 mph zone,  Trooper Berkebile activated his lights and siren, followed the suspect vehicle and pulled it over.  As Trooper Berkebile approached the vehicle he observed that the windows were tinted to such an extent that he was unable to see inside even with a flashlight.  He knocked on the window and waited for the driver, defendant, to open it.   Immediately, Trooper Berkebile was overwhelmed by the smell of air freshener and cover scent and also observed several air fresheners hanging from the rear view mirror.  He also observed a female passenger in the front seat who appeared to have been asleep or possibly under the influence.

Trooper Berkebile explained that the vehicle was stopped because of speeding and excessive window tint and asked defendant for a drivers' license, registration and proof of insurance. Defendant informed him that the car belonged to his girlfriend, Tia Turner, the front seat passenger.  Turner produced the car's vehicle registration, but defendant had no license, explaining

4

that his New Jersey license had been temporarily suspended.   He was able to produce a photo identification and court papers indicating that he had a court appearance scheduled on April 13, 2005, in New Jersey for the return of his license.

About this time, Trooper Berkebile noticed another passenger, later identified as Hussan Williams, lying across the rear passenger seat.   Williams subsequently sat up, but he appeared to Trooper Berkebile to be severely under the influence of some sort of intoxicant as he could hardly keep his eyes open or his head up.    When Trooper Berkebile asked if Williams had a license, defendant indicated that Williams' license also had been suspended and that he was only riding along to help defendant and Turner move furniture.

Trooper Berkebile noted that defendant appeared overly nervous throughout the entire conversation, his hands shaking when he handed over the documents and the pulse in his neck visibly pounding.    He also noted some conflicting statements from defendant and Turner concerning their whereabouts of that day, with defendant having indicated that they were coming from Allentown, but Turner stating that she had driven the car all the way from New Jersey before turning the driving duties over to defendant about 20 minutes earlier when she began feeling ill.

Trooper Berkebile then returned to his patrol car to do the paperwork.  While Trooper Berkebile was running the information on

5

the computer, Turner exited the LeSabre holding documents. Trooper Berkebile instructed her to get back inside the vehicle. Shortly thereafter, Sergeant DeLuca arrived and parked his car next to Trooper Berkebile's.   After confirming that defendant in fact did have a suspended license, Trooper Berkebile completed a warning notice for speeding, driving with a suspended license and excessively tinted windows, then returned to defendant's vehicle.

Trooper Berkebile asked defendant to exit and move to the rear of the vehicle, explaining that he does this routinely on all traffic stops for safety reasons.   Defendant accompanied the officer to the rear of the vehicle, where he presented Trooper Berkebile with paperwork for a lease in the Allentown area in an effort to prove that they had been in Allentown earlier.   Trooper Berkebile returned the documents to defendant and issued a traffic warning, telling defendant that he was cutting him a break and that he would be receiving no fine and no points.   Nevertheless, defendant remained oddly nervous, still shaking, pulse still raging in his carotid artery.   Trooper Berkebile told defendant that he was free to leave but that Turner would have to drive and that he would have to ask her some questions to determine if she was fit to drive.

Trooper Berkebile instructed defendant to stay at the rear of the vehicle and walked to the passenger side to speak to Turner. He informed Turner that she would have to drive.   As Turner

6

exited the vehicle and Trooper Berkebile turned to walk away, he turned back and asked her if he could ask her a few questions. Turner agreed.    Trooper Berkebile told her about problems with contraband on the Turnpike and asked Turner if the vehicle contained any contraband and asked if he could search it.  Turner consented.    Turner and Williams were asked to exit and to join defendant behind the vehicle with Sergeant DeLuca.    Trooper Berkebile explained to defendant that Turner, the vehicle's owner, had consented to a search.    Defendant attempted to make small talk with Trooper Berkebile as he began his search, but the officer ordered defendant to return to the rear of the vehicle.

A quick interior search of the main passenger compartment revealed spray air freshener cans in the pocket on the driver's side door and in the center console.    Trooper Berkebile then located the interior trunk release latch inside the vehicle which he used to access the trunk.    He walked back to the rear of the vehicle and began to search the trunk, immediately noticing a Nike shoe box and a plastic shopping bag.    He pulled the plastic shopping bag out and looked inside, where he observed a large number of bricks of heroin, *i.e.*, stamp bags of heroin bundled together with a rubber band.

Trooper Berkebile closed the trunk and terminated the consent search.    The passengers were handcuffed and arrested and advised of their Miranda rights by Sergeant DeLuca.    A K-9 unit arrived

7

and the dog indicated on the vehicle according to its handler. However, Turner refused to consent to allow the dog inside her car.

The three passengers were transported in separate vehicles to the Somerset barracks and their vehicle was towed while a search warrant was prepared. The passengers were processed, photographed, fingerprinted and searched. After being fingerprinted, defendant overheard Trooper Berkebile and Sergeant DeLuca discussing the heroin displayed on a nearby table. Defendant, unsolicited, interjected, "It's not as much as you think."

A search warrant for the vehicle subsequently was obtained and executed. The search resulted in the discovery of 3,000 bags of heroin in the Nike shoe box and another 3,092 bags in the plastic bag for a total of 6,092 stamp bags of heroin. Defendant seeks suppression of the heroin seized from the vehicle, as well as any statements he may have made at the station. Defendant's motion to suppress must be denied.

First, the initial stop of the vehicle was valid because Trooper Berkebile had probable cause to believe that defendant was speeding. A decision to stop a vehicle is reasonable where the police have probable cause to believe that a traffic violation has occurred. Id.; United States v. Moorefield, 111 F.3d 10, 12 (3rd Cir. 1997); see also Pennsylvania v. Mimms, 434 U.S. 106, 109

AO 72A
(Rev.8/82)

(1977) (a law enforcement officer who observes a violation of state traffic laws is entitled to stop the vehicle that committed the violation).    Here, Trooper Berkebile testified that he observed the suspect vehicle traveling at a rate that appeared excessive, and that the radar gun clocked the vehicle as traveling 55 mph in a 40 mph construction zone.    Trooper Berkebile's observation combined with the radar gun reading were sufficient probable cause to justify a stop of the vehicle.

Second, as the initial stop was valid, no Fourth Amendment violation was committed when Trooper Berkebile requested that defendant exit and move to the rear of the vehicle.    It is well settled that an officer executing a traffic stop may exercise reasonable superintendence over the car and its passengers and may order the driver and all passengers out of the vehicle, or order them to remain in the vehicle with their hands in the air, even absent any particularized suspicion. United States v. Bonner, 363 F.3d 213, 216 (3d Cir. 2004).    Trooper Berkebile testified that he routinely orders drivers from their vehicles on all traffic stops for safety reasons.    Trooper Berkebile's management of a traffic stop is within his discretion and no particularized suspicion was necessary in order for him to ask defendant to exit and step to the rear of the vehicle to issue the traffic warning.

Third, Trooper Berkebile did not improperly expand the scope of the stop by asking Turner for permission to search after the

9

warning had been issued and the initial basis for the stop had been resolved.   Under well-established Fourth Amendment law, officers can probe beyond the scope of an initial traffic infraction either where the officer reasonably believes that additional criminal activity is afoot, see e.g. United States v. Johnson, 63 F.3d 242, 247 (3d Cir. 1995) and Terry v. Ohio, 392 U.S. 1, 19-20 (1968), or where the target of the additional questioning consents to it.   See Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973).

Here, not only did the target of the questioning, Turner, consent to it, Trooper Berkebile also clearly had reasonable suspicion to suspect additional criminal activity was afoot based on the totality of the circumstances as established at the hearing.   The factors supporting his suspicion included: the excessively tinted windows; the fact that he had to knock on the driver's side window before defendant opened it; the overwhelming odor of air fresheners, which, in Trooper Berkebile's experience, are used by narcotics traffickers to mask odors;   defendant's extreme nervousness, physically manifested throughout the stop, even after he was informed that he would only be receiving a traffic warning;   the conflicting stories provided by defendant and Turner as to their prior whereabouts; and, finally, the back seat passenger's apparent severe intoxication, manifested by his difficulty in keeping his eyes open and his head up.

10

All of these factors together supported a reasonable suspicion that criminal activity may have been afoot to justify further inquiry.  Accordingly, Trooper Berkebile's request to ask additional questions and to seek Turner's consent to conduct a search did not constitute an impermissible expansion of the initial stop.

Likewise, defendant's challenge to the search of the vehicle itself is without merit.  First, defendant has no standing to challenge the search, as he did not own the vehicle that he was driving and he has advanced no reasonable expectation of privacy therein.  See, e.g., United States v. Schofield, 80 Fed.Appx. 798, 802 (3d Cir. 2003) (non-precedential) (when owner of vehicle is traveling with non-owner driver, the latter has no reasonable expectation of privacy in vehicle).  Second, based on the facts as established by the government at the hearing, Turner's consent to the search of the vehicle, which she owned, was voluntary under the totality of the circumstances.  See Bustamonte, 412 U.S. at 227.

At the hearing, defense counsel also argued that Trooper Berkebile exceeded the scope of Turner's consent to search the vehicle when he opened the plastic bag in the trunk, a bag belonging to defendant, not Turner.   The court also finds this argument unpersuasive.

In the first instance, just as defendant has no standing to

11

challenge Turner's consent to search the vehicle as a whole, he likewise has no standing to contest the search of the plastic bag contained within the trunk of that vehicle, even if the bag was his.   As already alluded to, the Third Circuit has noted in a non-precedential case that "the normal course is that when the owner of a vehicle is traveling with a non-owner driver, the latter has no reasonable expectation of privacy in the vehicle because a reasonable person would expect that the owner can handle or remove any item within the vehicle."   Schofield, 80 Fed.Appx. at 802.   Here, Turner, the owner, consented to the search of her vehicle, and defendant, as non-owner driver, accordingly had no reasonable expectation of privacy in the vehicle or anything therein.

Moreover, even assuming standing, a search of the bag was within the scope of the consent given by Turner, the owner of the vehicle, even though defendant may have owned the bag.   Based on Trooper Berkebile's testimony that he explained to Turner that he was asking to search the vehicle based on problems on the Turnpike with individuals trafficking in contraband, including drugs, Turner was aware that he was seeking consent to search the vehicle for drugs.    Accordingly, a reasonable person would have understood her consent as authorizing the search of any containers or other items found in the vehicle which could have contained drugs, including the plastic bag in the trunk.  See, e.g., Florida

12

v. Jimeno, 500 U.S. 248, 251 (1991) (when officer tells suspect he believes he is carrying drugs, reasonable for officer to understand that the search of a folded paper bag found in suspect's car was within scope of suspect's consent); United States v. Kim, 27 F.3d 947 (3$^d$ Cir. 1994)(reasonable person would have understood authorization for search of luggage for drugs to include permission to search any items found inside luggage that might contain drugs); United States v. Birt, 120 Fed. Appx. 424, 428 (3$^d$ Cir. 2005)(officer's search of overnight bag discovered in trunk of vehicle did not exceed scope of consent).

The uncontradicted evidence presented at the hearing establishes in this case that Turner, the owner of the car, voluntarily consented to a search of a her vehicle for contraband, including drugs.    Under Fourth Amendment jurisprudence, this consent necessarily encompassed consent to search any containers therein which could hold drugs.    The plastic bag in question, although not belonging to her, was inside her vehicle and obviously was an item which might contain drugs.    Turner made no attempt to revoke her consent to search the bag, and, defendant likewise failed to raise any objection to Trooper Berkebile's search of the bag by claiming ownership.    The search of the plastic bag therefore was within the scope of Turner's consent to search.

Finally, the court finds no basis for suppressing the

13

unsolicited statement that defendant made at the police barracks to the effect that the heroin seized was "not as much as you think". Before police can initiate custodial interrogation, they must advise the defendant of certain rights, including the right to remain silent and the right to counsel. <u>Miranda v. Arizona</u>, 384 U.S. 436, 468-70 (1966).

Here, under the uncontradicted facts established at the hearing through the testimony of both Trooper Berkebile and Sergeant DeLuca, defendant's statement, while uttered while he was in custody, nevertheless was an unsolicited statement that was not the product of any type of interrogation. Moreover, defendant already had been advised of his <u>Miranda</u> rights at the time he was taken into custody at the scene of the stop. Additionally, based on the facts as established, there is no basis upon which the court could conclude that defendant's statement was the product of coercion or duress, and defendant offered nothing at the hearing to suggest that his statement otherwise was involuntary.

The evidence in this case establishes that the initial stop of the vehicle was made upon probable cause, that Trooper Berkebile did not exceed the scope of the initial stop by asking additional questions, and that the search of the vehicle was conducted upon the voluntary consent of its owner and did not exceed the scope of that consent. Accordingly, defendant's motion to suppress must be denied.

AO 72A
(Rev.8/82)

An appropriate order will follow.

Gustave Diamond
United States District Judge

cc: Troy Rivetti
    Assistant U.S. Attorney

    James W. Krause, Esq.
    Picadio Sneath Miller & Norton, P.C.
    600 Grant Street
    4710 US Steel Tower
    Pittsburgh, PA   15219

15

AO 72A
(Rev.8/82)